IN RE THE RESOLUTION REGARDING THE APPLICATION BY ALL
PUPILS AND ALL PARENTS OF PUPILS OF ST. MARY'S CATHOLIC
SCHOOL TO WITHHOLD THE DISTRIBUTION OF FOUNDATION
PAYMENTS TO THE CITY OF CINCINNATI SCHOOL DISTRICT.*

[Cite as In re resolution (1978), 57 Ohio App. 2d 59.]

(No. 77 AP-782—Decided February 16, 1978.)

*Mr. James B. Helmer, Jr., Mr. John A. Lloyd, Jr.,*
and *Mr. C. R. Beirne,* for appellant, Cincinnati Board of
Education.

*Messrs. Dunbar, Kienzle & Murphey,* and *Mr. David
J. Young,* for appellees, all parents of pupils and all pupils
of St. Mary's Catholic School.

*Condit & Dressing Co., L. P. A.,* for appellee, St. Mary's
Catholic School.

*Mr. William J. Brown,* attorney general, and *Mr. Gary
E. Brown,* for appellee Ohio State Board of Education.

McCORMAC, J. In 1976, the City School District of
Cincinnati was the defendant in a desegregation suit
brought in federal district court by Mona Bronson, et al.
While that lawsuit was pending (and it remains
pending), a Catholic school in Cincinnati known as

---

*Reporter's Note: A motion to certify the record was overruled
by the Supreme Court of Ohio, June 16, 1978.

Holy Cross School was closed for economic rea-- sons. Fifty-two of the 55 students in that program elected to attend another Catholic school known as St. Mary's School, rather than DeSales School, a Catholic school located much closer to the Holy Cross School. Since DeSales School is predominantly black and St. Mary's School is predominantly white, as was Holy Cross School, the city of Cincinnati School Board felt that plaintiffs in the Bronson case could contend that the Cincinnati School District was aiding segregation if it continued to provide transportation and various remedial services to students at St. Mary's School, as it was reconstituted following the closing of Holy Cross School. Consequently, the city of Cincinnati School Board unilaterally elected to stop providing transportation and remedial services to students of St. Mary's School in the latter part of 1976. The Cincinnati School District was adamant and remains adamant in its contention that it will not deviate from this position unless the federal court tells it that it is not liable for an act of segregation by providing services to students at St. Mary's School.

The city of Cincinnati operates as a conduit for transportation and other services to non-public school children and parents, pursuant to R. C. 3317.06 and 3327.01. R. C. 3317.06 provides for a distribution of payments for special programs for non-public school students. These programs include the loan of secular textbooks, instructional materials, and equipment to students. Various remedial services are made available to the non-public school pupils. These include speech and hearing diagnostic services, diagnostic psychological services, physician, nursing, dental and optometrist services, therapeutic psychological, speech and hearing services, guidance and counseling services, and field trip transportation and services. Many of the remedial services are provided to non-public school students at locations away from their school.

The Cincinnati School Board received foundation payments from the state for providing the aforesaid services

to non-public school pupils in Cincinnati. Transportation was provided by way of yellow bus service, metro bus passes, and parent reimbursement. All such services were discontinued in late 1976 to not only the 52 pupils who transferred from Holy Cross to St. Mary's, but to all the pupils at St. Mary's. St. Mary's had about 393 students prior to the transfer of the 52 students from DeSales.

A complaint was made to the State Board of Education by the pupils and parents of pupils of St. Mary's Catholic School that the Cincinnati School Board was not conforming with the law by its unilateral decision to discontinue providing the state prescribed aid to the non-public school students at St. Mary's.

As pertinent, R. C. 3317.01 provides as follows:

"A city, local, exempted village, joint vocational, or county school district, the board of education of which has not conformed with the law and the rules and regulations pursuant thereto, shall not participate in the distribution of funds authorized by section 3317.02 of the Revised Code, except for good and sufficient reason established to the satisfaction of the state board of education and the state controlling board."

In other words, R. C. 3317.01 provides that state foundation funds for a school district not conforming with law may be withdrawn for nonconformance with law unless the nonconformance is for a good and sufficient reason. State foundation funds to the Cincinnati school district amount to approximately $24,000,000 a year and 30 percent of its budget. The amount of funds necessary to provide the required services to the pupils of St. Mary's School is about $120,000 a year.

A hearing was held before the State Department of Education, at which time the Cincinnati School District presented no evidence of discrimination. On the other hand, evidence was presented by officials and parents of pupils of St. Mary's School that the decision to transfer the students to St. Mary's School from the closed Holy Cross School was based on non-discriminatory reasons. It was explained that DeSales School was not a traditional Catholic school

with a traditional program, but a creative inner-city program operated much differently than St. Mary's School or the closed Holy Cross School and that St. Mary's School had a program that better fulfilled the needs of the former pupils of Holy Cross School. In any event, after the hearing the State Board of Education found that there was not good and sufficient reason for the Cincinnati School Board to unilaterally cut off services to the pupils and parents of St. Mary's School. An order was entered denying the Cincinnati School District the right to participate in the distribution of foundation funds unless the services were restored to the pupils and parents of St. Mary's School.

From the decision of the State Board of Education, an appeal was taken to the Franklin County Common Pleas Court pursuant to R. C. 119.12. The Franklin County Common Pleas Court found that the order of the State Board of Education was supported by reliable, probative and substantial evidence and is in accordance with law, and therefore affirmed the decision.

From the judgment of the Common Pleas Court, an appeal has been taken, setting forth the following assignment of error:

"It was error for the Franklin County Court of Common Pleas to affirm the June 13, 1977 Order of the State Board of Education because the State Board of Education erred in resolving to terminate foundation payments to the Cincinnati School District based upon findings of its referee that an arguably segregative practice by a private school which receives state money does not constitute a good and sufficient reason for the public body which channels those moneys to terminate the payment thereof."

Appellant has made no effort to prove illegal discrimination on the part of those connected with St. Mary's Catholic School. All of the proof presented has been to the contrary. However, appellant argues that even though the Cincinnati School Board has resisted the distribution of state foundation money to the pupils and parents of pupils of St. Mary's School until ordered by the State Board of Education to provide the services or lose their total founda-

tion distributions, which constitutes 30 percent of their budget, that the federal court may conclude that they were guilty of an act of discrimination to their prejudice in the Bronson case because of their providing services to pupils at St. Mary's School. While theoretically, such a ruling is possible, it would certainly not be reasonable or legal to hold the Cincinnati Board of Education responsible for an act of discrimination for following the order of the State Board of Education and Common Pleas Court to provide state mandated services to pupils at St. Mary's School even if someone else is ultimately able to prove discrimination in the transfer of students to St. Mary's School following the closing of Holy Cross School. While the Cincinnati School Board would like to have a binding federal court order to that effect before providing the services, that order is not likely to be forthcoming, either now or in the immediate future.

In the meantime, pupils of St. Mary's School are being denied badly needed remedial services which are for their benefit rather than for the benefit of the parochial school. The adverse effect of the denial of those services can never be eliminated and the services are being denied in the most crucial period of the lives of some of these students. The testimony at the hearing before the State Board of Education indicates the harm that is being done to innocent pupils entitled to certain rights under Ohio law because of the action of the Cincinnati School Board. Putting funds in escrow pending a final order in the Bronson case does not provide an acceptable interim solution because the problem is providing vitally needed services to young people now.

In no desegregation suit of which we are aware have essential services been withheld from needy children during the pendency of the desegregation action or even after a finding of illegal acts on the part of the school board. The Cincinnati School Board should not be allowed to withhold services in this case based on a vague and unfounded fear that providing the services under duress of state law might be held to be an act of discrimination. Hence the State Board of Education properly concluded that appellant's

64

failure to comply with the law was not for good and sufficient reasons.

It may seem harsh to order that all foundation payments be discontinued to the Cincinnati school system until their board of education conforms with the law by providing the services set forth by law to the students of St. Mary's School. However, such enforcement is the only effective way to obtain compliance with the order and to start the flow of vital services to St. Mary's students, which services, except for transportation expenses, do not appear to have any logical connection whatsoever with desegregation. The pupils are entitled to the remedial services irrespective of where they attend school. Yet the remedial services are being denied to all students at St. Mary's School, the vast majority of whom were students there prior to the closing of Holy Cross School. That is a state of affairs that should not be permitted to continue.

Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and WHITESIDE, JJ., concur.